## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MICHAEL R. RAY,                          :
                                         :
                 Plaintiff,              :
                                         :
        v.                               :        CIVIL ACTION NO.
                                         :        1:04-CV-0482-JOF
EQUIFAX INFORMATION                      :
SERVICES, LLC, et al.,                   :
                                         :
                 Defendants.             :

## OPINION AND ORDER

This matter is before the court on Plaintiff Michael R. Ray's motion for costs [200],

motion for order [206], motion to strike second motion for summary judgment [211], motion

to reopen discovery [212], motion for leave to file first amended complaint [215], motion

to enjoin previous motion to strike summary judgment [217], and motion for recusal [223];

Defendant Equifax Information Services, LLC's ("Equifax") motion to substitute attorney

[203] and second motion for summary judgment [209]; and Defendant MBNA America

Bank's ("MBNA") motion for summary judgment [207].

## I.     Background

### A.     Facts

Plaintiff Michael R. Ray filed for bankruptcy three times in the United States Bankruptcy Court for the District of South Carolina between February 2001 and February 2002.  Ray's claims were ultimately discharged via chapter 7 on November 21, 2002.  At this time, Ray obtained a report from Equifax, along with reports from the other major credit reporting agencies, to determine the status of his credit accounts after the discharge.  Ray located two so-called inaccuracies on his credit report related to his credit card accounts with MBNA. Ray initiated a formal dispute with Equifax and provided them with the bankruptcy discharge documents.  (P. Resp. Aff. ¶ 14).

Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681(a)(f) and is therefore governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*. Equifax assembles and produces consumer credit reports from reliable sources of credit information, including banks, creditors and merchants, and sells these reports to its clients to use in evaluating consumer credit risk.  Equifax houses its credit reports electronically, and these reports are updated frequently via automated computer tapes and electronic transmissions directly from the sources of credit information.  In the event that a consumer disputes an item on his credit report, Equifax initiates a reinvestigation procedure to verify the information obtained from the automated source.  Equifax places the unverified

AO 72A
(Rev.8/82)

information on a separate computer file and contacts the original source to investigate the dispute. Equifax then suppresses information that cannot be verified so that it does not reappear on the consumer's report.

MBNA is a commercial bank that among other things offers its customers credit cards. MBNA reports credit information regarding its customers' accounts to credit reporting agencies, such as Equifax. "MBNA does not regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers [including Plaintiff] for the purpose of furnishing consumer reports to third parties." (MBNA Stat. Mat. Facts, at ¶ 3). The alleged inaccuracies in this case involve two accounts Ray opened with MBNA.

Ray opened an account with MBNA, numbered 5490-9900-1316-9469 ("account 9469") on August 16, 1994. The account fell into arrears, and MBNA ultimately charged $6,566.65 off as bad debt on May 8, 1999.[1] From August 16, 1994 until June 1, 1999, MBNA reported to the credit reporting agencies, including Equifax that the 9469 account had an overdue unpaid balance. On June 1, 1999, MBNA sold the renumbered 9469 account to North America Capital Corp. MBNA quit making reports on this account and forwarded all correspondence or inquiries concerning this account to North America Capital Corp.

---

[1]When an account is charged off by MBNA it receives a new account number. The 9469 account was re-numbered 5490-9909-9927-728.

3

Ray opened a second account with MBNA on May 13, 1997, numbered 1458-40 ("the 1458 account"). This account fell into arrears. MBNA charged off $4,446.58 as bad debt on June 25, 1999.[2] From May 13, 1997 until July 1, 1999, MBNA reported to all credit reporting agencies, including Equifax, that the 1458 account had an overdue unpaid balance. On July 1, 1999, MBNA sold account 1458 to Credit Trust and ceased making any reports about it to the credit reporting agencies. MBNA forwarded all correspondence it received on this account to Credit Trust. MBNA received notice of Ray's chapter 13 bankruptcy filing on July 9, 2001, a copy of the Order of Dismissal of Ray's bankruptcy filing on October 10, 2001, and notice of Ray's chapter 7 bankruptcy filing on February 14, 2002. Per standard procedure, MBNA forwarded these documents to North America Capital Corp. and Credit Trust.

Plaintiff and Equifax communicated numerous times in 2003 regarding Plaintiff's credit report, and Plaintiff received several credit reports and credit files. Plaintiff submitted a credit file from October 2003 which indicates that he requested a report or research from Equifax nineteen times between July and October of 2003. (P. Resp., at Ex. J). On October 22, 2003, Equifax provided a letter to Plaintiff which indicated that "[MBNA] has verified to Equifax that the current status [of Plaintiff's accounts] [was] being reported correctly. Additional information has been provided from the original source regarding this

---

[2]MBNA re-numbered this account as 7498-1999-2141-92.

4

item. See enclosed credit file." (*Id.* at Ex.F).  On December 8, 2003, Plaintiff mailed a letter to MBNA advising them that his credit entries regarding his MBNA accounts were incorrect. (P. Resp. Aff., Ex. A).  Despite Plaintiff's assertions of inaccuracy, this letter appears to state that the two MBNA accounts are "properly reporting" as "In Bk Ch 7 [zero] Bal."  (*Id.*).  This letter directed MBNA that Plaintiff's accounts should read "included in chapter 7 bankruptcy, closed."  (*Id.*).  Plaintiff also sent a letter to Equifax on December 15, 2003, via certified mail, which notified it that Plaintiff had contacted them on multiple occasions, errors remained, and Plaintiff planned to sue if the errors were not corrected. (Cmplt., at Ex. A).  Plaintiff also sent MBNA other correspondence regarding his accounts which it forwarded to Credit Trust and North America Capital Corp.

### B.      Procedural History

Plaintiff filed suit *pro se* against Equifax, Online Information Services, Inc. ("Online"), Capital One Bank ("Capital One"), Anderson Financial Network, Inc. ("Anderson"), Nationwide Credit ("Nationwide"), and MBNA on February 5, 2004, alleging violations of the FCRA, 15 U.S.C. § 1681, *et seq.*, the S.C. Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, *et seq.*, and numerous common law tort claims. Plaintiff's claims arose out of problems with his Equifax credit report, most notably the reporting of accounts as charged off rather than discharged in bankruptcy.  Plaintiff claimed

AO 72A
(Rev.8/82)

that his allegations commenced on or about July 3, 2003, and continued up until the filing of his complaint.

The court has resolved Plaintiff's claims against Online, Capital One, Nationwide, and Anderson and has partially resolved Plaintiff's claims against Equifax.  The instant motion involves Plaintiff's remaining claims against Equifax under section 1681e(b) of the FCRA and SCUTPA and Plaintiff's claims against MBNA.  Each of the remaining defendants filed their first motion for summary judgment on August 15, 2005 [132, 133].  After Defendants filed their motions, Plaintiff argued that he could not respond and requested that the court allow for additional discovery.  Plaintiff's motion for additional discovery did not contain any information, however, about the additional discovery he required including individuals he wished to depose, additional documents he required, etc.  The court ruled on November 22, 2005, that Plaintiff had not satisfied the requirements of Fed. R. Civ. P. Rule 56(f) to extend the closing date of discovery, that discovery was closed, and that Plaintiff must respond to Defendants' motions.  The court granted Defendants' motions for summary judgment on February 28, 2006, and dismissed Plaintiff's complaint with prejudice [173].  Plaintiff appealed in forma pauperis.  Plaintiff argued that discovery had ended prematurely and that Defendants failed to meet their burden on summary judgment.  On April 5, 2007, the Eleventh Circuit vacated this court's summary judgment order on the ground that Plaintiff had not been provided with the notice required under Fed.

6

R. Civ. P. 56(c) and remanded the matter for further proceedings [205]. The Eleventh Circuit never reached the merits of Plaintiff's claims.

In remanding, the court ordered that Plaintiff/Appellant recover his costs on appeal. On April 11, 2007, Plaintiff filed a detailed bill of costs with the Eleventh Circuit. Plaintiff sought costs and fees of $2,802.41 to be split between Defendant Equifax and Defendant MBNA. Defendant MBNA objected to Plaintiff's bill. On June 26, 2007, the Eleventh Circuit sustained in part MBNA's original and supplemental objections to Plaintiff/Appellant's bill of costs "to the extent that Appellant seeks amounts not taxable under Fed. R. App. P. 39 and 11th Cir. R. 39-1" and taxed costs in the amount of $171.60. On July 2, 2007, Plaintiff brought a motion for costs and fees [200] in this court. Plaintiff requested the same costs as he had at the circuit, minus the $171.60 he was awarded. Plaintiff filed a motion to substitute attorney on July 13, 2007. On July 30, 2007, Plaintiff filed a motion for order requiring Defendants to serve Plaintiff with any documents filed in this case [206].

Defendant MBNA filed its second motion for summary judgment on August 8, 2007 [207], and Plaintiff received notice to respond to this motion pursuant to Rule 56(c) [208]. Defendant Equifax filed its second motion for summary judgment on August 13, 2007 [209], and Plaintiff received notice to respond to this motion pursuant to Rule 56(c) [210]. These motions present essentially the same arguments as those contained in the parties' first

7

motions for summary judgment. Plaintiff filed a motion to strike MBNA's second motion for summary judgment as premature [211], and a motion to reopen discovery and issue an order establishing the current status of the litigation [212] on August 15, 2007. Plaintiff filed a motion for leave to file a first amended complaint [215] on August 16, 2007. Plaintiff filed a motion for extension of time to respond to MBNA's second motion for summary judgment [216] on August 20, 2007, which the court granted by order on November 15, 2007. Plaintiff filed a motion to join Defendant Equifax in his previous motion to strike Defendant MBNA's motion for summary judgment and motion for extension of time [217]. The court allowed Plaintiff to join Equifax in his motion for extension of time by order of November 15, 2007[3] [222]. On November 23, 2007, Plaintiff filed a motion to recuse the undersigned [223].

## II.   Other Matters

Plaintiff filed a number of motions prior to and following Defendants' renewed motions for summary judgment. As many of these motions affect the court's ability to proceed with Defendants' motions for summary judgment, the court will address them first.

---

[3]The court now GRANTS the remaining portion of Plaintiff's motion [217]. The court's ruling with regards to striking Defendant MBNA's second motion for summary judgment will also apply to Defendant Equifax's second motion for summary judgment.

8

### A.     Motion for Costs [200]

Plaintiff seeks an award of costs and fees against the remaining two defendants in the amount of $2,630.81 in addition to the $171.60 awarded by the Eleventh Circuit pursuant to Federal Rules of Appellate Procedure Rule 39(e).  Plaintiff submitted a bill of costs to the Eleventh Circuit for $2,802.41.  One thousand six-hundred eighty dollars ($1,680) of the requested amount was for eighty-four hours of legal fees at a rate of $20.00 per hour.  Plaintiff claimed these fees himself as a trained legal assistant and paralegal.  Plaintiff also claimed $1,122.41 in costs.[4]  The Eleventh Circuit allowed Plaintiff/Appellant $162.50 of his $255.50 in claimed copy costs and $9.10 of his claimed $15.05 in materials/envelopes.  The court awarded no costs for postage, filing fees, legal materials, or paralegal fees.

Plaintiff contends that he is entitled to an award of costs under Fed. R. Civ. P. 54 and Fed. R. App. P. Rule 39(e) which allows him to "tax the district court" for those appeal costs not awarded by the circuit.  Defendants assert that  Plaintiff is not entitled to an award of costs under Rule 54 because he has not yet been established as the "prevailing party" in this matter, and he has not "specif[ied] the judgment and statute, rule, or other grounds entitling [him] to [an] award" as Rule 54 requires.  Defendants further aver that Plaintiff is not

---

[4]Plaintiff's costs included $255.50 in copy costs, $130.71 in postage, $15.05 in envelopes, and $726.30 in "other" costs. Plaintiff's "other" costs included a $255.00 appeal filing fee, a $150.00 legal manual, a $90 legal CD-Rom, $9.10 in binding and cover costs, a $77 legal treatise, $41.00 for the district court record, $21.60 for copies of the record on appeal, $38 for Westlaw research, and $54.40 for the copy of a transcript in another case.

entitled to costs or attorneys' fees under Rule 39(e) because he has presented no evidence that he has paid any costs authorized by Rule 39(e), and Plaintiff's motion for fees is directed to the wrong court and does not contain the required memorandum and summary supported by contemporaneous records.

Fed. R. Civ. P. Rule 54 sets out the procedure for the court to award costs or attorney's fees to the prevailing party following a judgment. This matter was still pending before this court at the time Plaintiff filed the instant motion for costs. There had been no judgment issued in this matter, and the court had not established a prevailing party. Further, Fed. R. Civ. P. Rule 54 does not contemplate appeal costs. Therefore, Plaintiff cannot recover under Rule 54.

Fed. R. App. P. Rule 39(e) allows the district court discretion to tax the following appellate costs to the losing party:

1.    The preparation and transmission of the record;

2.    The reporter's transcript, if needed to determine the appeal;

3.    Premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

4.    The fee for filing the notice of appeal.

*See Campbell v. Rainbow City*, 209 Fed. Appx. 873, 875 (11th Cir. 2006) (discussing the court's discretion). All other appellate costs must be recovered in the Court of Appeals.

10

The only cost that Plaintiff has alleged that falls within the bounds of Fed. R. App. P. Rule 39(e) is the $255.00 fee for filing the notice of appeal.  It appears to the court from its reading of the Eleventh Circuit's August 9, 2006 Order [193] and the United States Court of Appeals Consent Form dated June 14, 2006 [188], that Plaintiff has paid this fee. Therefore, the court GRANTS-IN-PART and DENIES-IN-PART Plaintiff's motion and AWARDS Plaintiff $255.00 in costs.

### B.    Motion to Substitute Attorney [203]

Defendant Equifax has moved the court to substitute its current attorney, John Friedline of Kilpatrick Stockton, LLP, with Michael D. Douglas of King & Spalding, LLP. Effective January 1, 2007, Equifax transferred all of its consumer litigation across the United States and Puerto Rico to King & Spalding.  Mr. Douglas filed a notice of appearance as new counsel.  The court GRANTS Defendant Equifax's motion to substitute counsel and DIRECTS the Clerk of Court to modify the counsel of record in accordance with Mr. Douglas's notice [202] and this motion.

### C.    Motion for Order [206]

Plaintiff contends that he had no contact with anyone regarding Equifax's representation in this matter from January 2007 to the July 2007 filing of this motion. Plaintiff contends specifically that the parties never made him aware of Equifax's substitution of counsel.  Plaintiff avers that Defendant's counsel believes that he receives

AO 72A
(Rev.8/82)

electronic notices through the CM/ECF filing system.  Plaintiff desires the court to remind counsel for Defendant Equifax that Plaintiff does not have access to e-mail in federal prison and that all pleadings should be noticed to him by mail.  Defendant Equifax has not responded to this motion.

Fed. R. Civ. P. 5, Local Rule 5.1, and the court's standing order regarding electronic case filings and procedures, contained in appendix H to the local rules, set out the procedure for service and electronic service.  Section II.B.3 of the court's standing order directs that a party filing electronically must provide a party not registered to participate in the ECF system with a paper copy of any electronically-filed pleading, document or order in accordance with the Fed. R. Civ. P. 5.  Footnote 2 of this section explains how a party may determine who is registered to receive electronic mailings and who is not.

Plaintiff is not a registered participant in the ECF system for purposes of this case. Thus, he must be provided with service under Rule 5, which allows for service at his last known address.  Defendant Equifax's Certificates of Service attached to its Notice of Appearance of Michael D. Douglas [202] and its Motion to Substitute Attorney [203] state that they "were filed electronically and served by mail on anyone unable to accept electronic filing."  Such certificates are acceptable.  Given the notice issues surrounding this case, however, the court DIRECTS Defendants henceforth to include Plaintiff's name and address served in their certificates of service rather than generically referring to "anyone unable to

12

accept electronic filing." This will assure all parties involved in this matter that service is being effectuated. Plaintiff's Motion for Order is GRANTED. The court notes that Plaintiff has received notice of Defendants' Second Motions for Summary Judgment via certified mail, and there is no question with regards to his notice in these matters.

**D.    Plaintiff's Motion to Strike [211] and Motion to Reopen [212]**

Plaintiff contends that MBNA's second motion for summary judgment is premature and should be stricken because the court has not issued a new scheduling order, has not allowed the parties to proceed with additional discovery, and has not yet allowed Plaintiff to amend and clarify his complaint. Plaintiff moved the court to reopen a four-month discovery track, set "docket control dates, relating to discovery, dispositive motions, etc.," and issue an order "establishing the current status of this case" to avoid future confusion and the need for appellate intervention. (P. Motion to Reopen, at 1). Plaintiff claimed he needed additional time to "complete the discovery necessary to obtain the materials needed for affidavits, exhibits, etc ., to defend a motion for summary judgment." (*Id.*). Plaintiff stated no particular pieces of information he had been unable to attain during the first year of discovery, and he did not request to depose any individuals or mention any specific documents necessary to adjudicate his case. Plaintiff's arguments and requests are without merit.

13

Fed. R. Civ. P. 56(b) states that a defendant may move for summary judgment on any claim against him at any time with or without supporting affidavits.  Rule 56(f) contains a limited exception that allows the court to refuse to consider summary judgment and grant additional time or further discovery in certain circumstances.  This court considered these circumstances in its November 2005 order and ruled that Plaintiff was entitled to no additional time or discovery.  The Eleventh Circuit did not address this issue in its order to remand, and the reasoning of this court's November 2005 order stands.  The Eleventh Circuit's order for remand sought to address the issue of notice.  Defendants have filed second motions for summary judgment and have given Plaintiff notice of these motions via certified mail.  The Eleventh Circuit's remand requires no more.  Further Plaintiff's motion to strike and motion to reopen discovery are essentially motions for extension.  This court discussed Plaintiff's numerous requests for extension in its November 15, 2007 order and firmly stated that it would not continue to lengthen the time necessary to adjudicate this matter.  Plaintiff filed his complaint three years ago and has had extensive time to pursue discovery.  The court finds that Plaintiff's motion to strike and motion to reopen are mere stalling techniques.  Plaintiff's motions are DENIED.

### E.	Motion to Amend [215]

Since September of 2005, this lawsuit has been solely about the actions of Equifax and MBNA.  Now, Plaintiff seeks to add claims against North America Capital Corp. and

14

Credit Trust because current Defendant MBNA sold Plaintiff's accounts to these entities and claims that it had no responsibility for maintaining the accuracy of Plaintiff's credit report after these sales.  Plaintiff filed his initial complaint roughly three years ago.  Defendants answered, the parties took discovery, and Defendants have filed substantive motions to dispose of Plaintiff's claims.

Pursuant to Fed. R. Civ. P. 15(a), after a responsive pleading has been filed, a plaintiff may amend the complaint only by leave of the court.  The decision whether to grant or to deny leave is within the sound discretion of the district court.  *Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir. 1988).  However, because Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," there must be some substantial reason justifying denial of a motion to amend.  *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984).  Factors that would justify denial of a motion to amend include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, and futility of the amendment.  *Id.*  In reviewing a motion to amend, the court may also consider the amount of time and opportunities the movant has had to seek to amend, whether the proposed amendment could have been added shortly after the original complaint was filed, whether allowing the amendment will require additional discovery, whether the movant has attempted to justify its delay in moving to amend, and "whether the impetus behind the filing of the motion was the prior filing of a motion for summary

15

judgment after full discovery." *O'Brien v. Union Oil Co. of Cal.*, 699 F. Supp. 1562, 1571 (N.D. Ga. 1988) (Forrester, J.) (citations omitted).

Plaintiff contends that he should be allowed to amend his complaint because (1) two additional parties, North America Capital Corporation and Credit Trust, must be included in the action to properly adjudicate the claims of the Plaintiff, and (2) Plaintiff's original complaint is vague and the claims asserted are unclear. Defendant MBNA contends that Plaintiff has long known about the sale and only moves to amend now to avoid responding to their motion for summary judgment. Defendant MBNA further asserts that Plaintiff has provided no evidence or authority for his contention that North America and Credit Trust are necessary parties for the adjudication of Plaintiff's claims against Equifax and MBNA.

The court finds it most significant that Plaintiff has known about the sale of his accounts for more than two years, has only now moved to amend on the eve of having to respond to a motion for summary judgment, and has offered no justification for his delay. Discovery in this matter lasted a full year and closed on July 26, 2005. During this time Plaintiff received responses to two sets of interrogatories and two sets of requests for document production from MBNA. MBNA produced documents on May 6, 2005, clearly detailing the sales of Plaintiff's accounts in 1999, and MBNA's counsel sent a letter to Plaintiff on July 26, 2005, explicitly mentioning the sale. Therefore, the role of North America Capital Corporation and Credit Trust is not a newly discovered fact. Further, the

16

court notes that the present Defendants have been involved in this litigation for more than three years and are anxious to complete it.  The court currently has no information about the communications Credit Trust and North America Capital Corporation received regarding Plaintiff or the actions, if any, these entities took with respect to Equifax.  Adding these parties would certainly require an additional period of discovery and would thus be extremely prejudicial to the current Defendants at this late date.  Plaintiff's motion to amend is DENIED.

### F.  Motion to Recuse [223]

Plaintiff requests that the undersigned recuse himself on the basis of bias.  Plaintiff's allegation of bias is based on the fact that (1) the undersigned has not yet ruled on a number of Plaintiff's pending motions, most notably Plaintiff's motion to reopen discovery, (2) the Eleventh Circuit overruled and remanded this court's summary judgment order, and (3) this court previously issued an order declaring Plaintiff's claims to be frivolous.  Plaintiff asserted that if the undersigned did not recuse himself, Plaintiff would file a writ of mandamus with the Eleventh Circuit and compel his removal.  Defendants contested Plaintiff's motion and contended that Plaintiff's only basis for bias was the court's judicial rulings.  Defendants cited numerous cases for the proposition that judicial rulings alone cannot be a valid basis for disqualification on the basis of bias.

17

> Plaintiff moved for recusal under 28 U.S.C. §§ 144, 455. Section 144 states:
>
> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . .

Section 455 sets out the grounds for which a judge should disqualify himself; such grounds include "personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). Sections 455 and 144 are construed *in para materia*, and the test for bias and prejudice is the same under both. *In re Corrugated Container Antitrust Litigation*, 614 F.2d 958 (5th Cir. 1980). The court must consider all properly pleaded facts in a § 144 affidavit as true. *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000). The court should grant the motion to recuse if these facts "would convince a reasonable person that bias actually exists." *Id.* The pleading standard under § 455 is similar and asks "whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *Id.* The law only requires disqualification when the alleged bias is personal in nature. *Loranger v. Stierheim*, 10 F.3d 776, 780 (11th Cir. 1994). "For a bias to be personal, and therefore disqualifying, it must stem from an extra-judicial source." *Id.* Therefore, a judge cannot be required to recuse on the basis of adverse rulings or delays in the same case. *Id.* at 781.

18

Even taking all the facts alleged in Plaintiff's affidavit as true, Plaintiff has not shown facts that would convince a reasonable person that personal, extrajudicial bias actually exists. All of Plaintiff's allegations of bias relate directly to the timing and content of the judge's rulings in this matter. Plaintiff alleged no facts implying an *extrajudicial* bias. In rare cases, the courts have found grounds for recusal in a judge's judicial remarks or rulings. *Loranger*, 10 F. 3d at 780. However, such rulings must indicate pervasive bias and prejudice. *See id.* (citing *Davis v. Bd. of Comm'rs*, 517 F.2d 1044, 1051 (5th Cir. 1975) (indicating comments in a judicial context regarding a certain racial or religious group might be grounds for personal bias)). A judge's adverse rulings in a matter and his delay do not indicate such "pervasive bias." *Id.* at 781. Plaintiff's motion is DENIED.

### III.   Motions for Summary Judgment [207, 209]

Equifax has moved for summary judgment as to its violations of the reporting requirements in 15 U.S.C. § 1681e(b) and SCUTPA. MBNA has moved for summary judgment as to its general violations of the FCRA, SCUTPA, and its relationship of trust with Plaintiff. The court may grant a motion for summary judgment when "the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact necessary to defeat a motion for summary judgment must be supported by

19

evidence.  *Dickson v. Amoco Performance Products, Inc.*, 845 F. Supp. 1565 (N.D. Ga. 1994).  Further, a court should grant a motion for summary judgment whenever there is "a complete failure of proof concerning the essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  In deciding a motion for summary judgment, the court must accept all facts in the light most favorable to the non-moving party. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242-43 (2001).[5]

As an initial matter, the court notes that Plaintiff is proceeding in this matter *pro se*. The court is well aware of its obligations with regards to *pro se* plaintiffs, and it has done its best to fulfill them.  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (noting that courts must liberally construe *pro se* pleadings and hold them to a less stringent standard than attorney-drafted pleadings); *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (noting that leniency toward *pro se* plaintiffs does not allow the district court to act as counsel for a party or to rewrite deficient pleadings). *See also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never

---

[5]Local Rule 56.1(B)(2)(a) requires Plaintiff to include with his summary judgment response brief "individually numbered, concise, non-argumentative responses corresponding to each of the movant's numbered undisputed material facts" as well as "a statement of additional facts which the respondent contends are material and present genuine issue[s] for trial."  Plaintiff's response does not include a statement of additional facts or responses corresponding to the movants' numbered undisputed facts.  Local Rule 56.1 states that the court will deem each of the movant's facts as admitted unless the respondent directly refutes them with a citation to the record.  As such, this court deems the facts in Defendants' statements of material facts as admitted.

suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). Despite its best efforts, however, the court has found it difficult to adjudicate this matter due to the poor state of record. Despite more than a year of discovery, the parties have taken no depositions. Defendants have presented no evidence other than the affidavits of their employees. Plaintiff has submitted more than eighty pages of evidence to the court along with his response to summary judgment, but this evidence is not clearly labeled or organized, and it is difficult for the court to determine its source or authenticity. Neither party has clearly presented the credit reports most relevant to the questions before the court.

### A.    The FCRA Claims

The purpose of the FCRA is to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b). The FCRA imposes duties and obligations on consumer reporting agencies, such as Equifax, which issue reports to third parties and on entities, such as MBNA, which provide information to consumer reporting agencies.

21

### 1.    FCRA § 1681(e)(b):  Reasonable Procedures

The FCRA provides that "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  In order to succeed on a FCRA claim under section 1681(e)(b), a plaintiff must show that (1) inaccurate information was included in his credit report; (2) the inaccuracy was a result of the credit agency's failure to follow reasonable procedures; (3) the plaintiff suffered injury; and (4) the injury was caused by the inclusion of the inaccurate information. *See, e.g., Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991).

In order to meet the first prong of this test, Plaintiff must show that (1) his Equifax report contained inaccurate information and (2) that Equifax distributed that information to a third party.  Plaintiff alleged that his report was inaccurate because Equifax had deleted "some twenty-seven accurate, paid up, or otherwise closed accounts which were previously reporting correctly and properly" and because Equifax did not correctly list his two MBNA credit card accounts as discharged in bankruptcy.  (Cmplt. ¶¶ 53-54).  Plaintiff offered five pieces of evidence to support his arguments.

First, Plaintiff submitted what appears to be a copy of his July 3, 2003, Equifax Credit File which listed twelve entries as "Paid Account/Zero Balance," to support his claim

of inaccurate deletions and asked the court to compare this to the January 2004 report issued to Citibank which he alleged did not include these entries. (P. Resp. Aff., at Ex. K). [6] The court is unable to locate Plaintiff's January 2004 report in the record, however. Thus, this piece of evidence is insufficient evidence of an inaccuracy. Further, the court notes, "Consumer reporting agencies are not required to include all existing or derogatory or favorable information about a consumer in their reports." *Statements of General Policy or Interpretations Under the Fair Credit Reporting Act*, 16 C.F.R., Subchapter F, Pt. 600, Appendix, pp. 492-519. As such, the court finds that Plaintiff has not met his burden of proving that Equifax created an inaccuracy by removing positive accounts.

Next, Plaintiff submitted what appears to be an October 21, 2003 Equifax credit file. The Plaintiff references an October 21, 2003 credit report, but Plaintiff did not submit this report to the court. The October 21 credit file did not include the MBNA accounts at all and is thus insufficient evidence of an inaccuracy with regard to these accounts. (*Id.* at Ex. F).

---

[6]Plaintiff received a letter from Citibank, issued on June 10, 2004, which stated that Citibank was unable to approve Plaintiff for a Citi Platinum Select Mastercard account because "[a] credit obligation related to a bankruptcy or financial counseling plan was recorded on [his] credit bureau report" and "[a] delinquent credit obligation(s), either paid or unpaid, was recorded on [his] credit bureau report." (Resp. Afft., Ex. H). The letter stated, "Our credit decision was based in whole or in part on information obtained in a report from [Equifax]." (*Id.*).

Third, Plaintiff submitted what appears to be an October 22, 2003, Equifax credit report and credit file and an October 22, 2003 document entitled, "ACRO Maintenance Transaction Summary."  The October 22 report listed the MBNA accounts as "Account Transferred or Sold."  (P. Resp. Aff., Ex. E).  The October 22 credit file listed the MBNA accounts as "Charge Off" and included additional information of "Account Sold or Transferred."  (*Id.*).    Even if the court assumes that Equifax reported the accounts as charged off and sold or transferred, the most complete representation, Plaintiff has not proven that such reports were inaccurate.

The Eleventh Circuit has identified two judicial approaches to the question of "inaccuracy" but has adopted neither.  *Cahlin*, 936 F.2d at 1157.  Under the first approach, a plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was "accurate on its face" or "technically accurate" even if it might be misleading or incomplete in some respect.  *Id.* Under the second approach, a credit reporting agency fails to satisfy its obligation of "maximum possible accuracy" if it reports information that is factually accurate but misleading or incomplete.  *Id.*

Here, under the first approach, Equifax's MBNA entry appears accurate.  It is an uncontested fact that MBNA charged off Plaintiff's accounts in 1999 and sold them to Credit Trust and North America Capital.  Under the second approach, however, Equifax's entries are inaccurate, since they fail to mention the bankruptcy discharge and are thus

"incomplete in some way."  In the absence of contrary direction from the Eleventh Circuit, this court will adopt the "technically accurate" approach as taken in *Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1240-41 (N.D. Ala. 2002).

In *Heupel* a credit reporting agency reported a joint account as "Ch 13 Wage Earner Plan Acct."  *Id.*  The Plaintiff argued that this was inaccurate because it implied that she had filed for bankruptcy when she had not.  *Id.* at 1238-40.  In fact, Plaintiff's ex-husband, the other joint obligor on the account, had filed for bankruptcy after their divorce.  *Id.*  The court adopted the "technically accurate" approach believing it to be fairer to reporting agencies, a better conservator of judicial resources, and the best method to prevent plaintiffs from "avoid[ing] summary judgment by merely identifying information that is pertinent to the decision to grant or deny credit, of which the reporting agency neither knew nor had reason to know."  *Id.* at 1241.  In doing so, the court held that the report of the account as a chapter 13 wage earner account was accurate within the meaning of section 1681(e)(b).

Under the reasoning of *Heupel* and the "technically accurate" approach, Plaintiff has not met his burden of showing that Equifax reported the MBNA accounts inaccurately because it reported them as "transferred or sold" and "charged off."  Further, even if inaccurate, Plaintiff has presented inconclusive evidence that this credit information was

25

transmitted to a third party.  Plaintiff's October 22, 2003 Credit File indicated that Equifax

issued no credit reports to companies during this time.  (*Id.*).[7]

Finally, Plaintiff presented a June 2004 letter from Citibank to Plaintiff, indicating

that it had received a report from Equifax.  (*Id.*, at Ex. H).  Plaintiff's June 2004 letter from

Citibank, unlike the Credit Files, clearly indicates that Equifax published a report to a third

party.[8]  However, as the court has previously stated, Plaintiff has not presented the report

Citibank received or any report issued during the relevant time period, and thus the court

cannot assess its inaccuracy.  Further, the court finds it significant that the Citibank report

was issued in 2004, after Plaintiff's December 2003 letter to Defendant Equifax.  This letter,

sent by Plaintiff prior to the initiation of litigation, listed the two relevant MBNA accounts

under the category "Equifax Accts with Report Negative/Bankruptcy Which Are Properly

Reporting."  (Cmplt., Ex. A).

---

[7]Plaintiff's October 21, 2003, Credit File does indicate that Equifax issued reports to five companies between January 2003 and October 2003 (P. Resp. Aff., at Ex. J). However, the court finds this evidence unreliable since the October 21 report included no mention of MBNA and this report creates such a wide discrepancy between two reports that appear to be issued during the same week.

[8]As the court has previously stated Plaintiff received a letter from Citibank, issued on June 10, 2004, which stated that Citibank was unable to approve Plaintiff for a Citi Platinum Select Mastercard account because "[a] credit obligation related to a bankruptcy or financial counseling plan was recorded on [his] credit bureau report" and "[a] delinquent credit obligation(s), either paid or unpaid, was recorded on [his] credit bureau report." (Resp. Afft., Ex. H).  The letter stated, "Our credit decision was based in whole or in part on information obtained in a report from [Equifax]."  (*Id.*).

Overall, the wide inconsistencies in Plaintiff's evidence make it difficult for the court to determine how Equifax actually reported the MBNA account to third parties. Further, the court finds it odd that Plaintiff included the December 2003 letter in the record but does not address his notations about MBNA. This letter alone raises doubts as to whether Equifax, if it was ever reporting Plaintiff's information inaccurately, was doing so at the time Plaintiff initiated litigation. Looking at all of Plaintiff's evidence in the light most favorable to his claim, the court finds that Plaintiff has failed to prove with any of his pieces of evidence that Equifax reported an inaccuracy to a third party.

Assuming *arguendo* that Plaintiff had met his burden with regard to inaccuracy, he has not met his burden with regard to causation. Because Ray has failed to meet his burden of proving the first element in his prima facie case, the court GRANTS Defendant Equifax's motion for summary judgment as to Plaintiff's claim under section 1681. Inasmuch as Ray has failed to establish that Equifax negligently violated the FCRA, the court need not even address Ray's allegation that Equifax willfully violated the FCRA. *Johnson*, 510 F. Supp. 2d at 648.

27

### 2.    FCRA:  Information Providers

Plaintiff alleged generally that MBNA violated its duties under the FCRA by failing to correctly report Plaintiff's accounts to Equifax as discharged in bankruptcy.  As an initial matter, MBNA is not a consumer reporting agency and is not obligated in the same ways as a consumer reporting agency under the FCRA.  *Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Circuit 1988) ("[W]here [a] Bank has reported information based solely on its own experience with one of its customers, the Bank is not acting as a 'consumer reporting agency,' within the meaning of the Fair Credit Reporting Act.").  There is some disagreement in the law as to the scope of exposure under the FCRA for creditors like MBNA that furnish information about their customers.  *See Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007, 1010 (S.D. Iowa 2003) (collecting cases).  However, even under the broadest view, those who furnish information have a duty to (1) present accurate information, pursuant to § 1681s-2(a), and (2) investigate the accuracy of information once a report of a dispute has been received, pursuant to § 1681s-2(b).  Enforcement under 2(a) is left to state and federal agencies while consumers may bring a cause of action under 2(b). *Id.*  Plaintiff cannot make out a claim under 2(b) however because Plaintiff has admitted that all of MBNA's reports were accurate when made.

The FCRA also requires that Plaintiff prove that the Defendant furnished the false information willfully or with malice.  15 U.S.C. § 1681h(e).   To show willful

28

noncompliance with the FCRA, the Plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others or committed an act which defendant knew to violate the law.  *Jordan v. Equifax Information Serv. LLC*, 410 F. Supp. 2d 1349, 1354 (N.D. Ga. 2006).  Plaintiff has presented no evidence here that MBNA acted willfully.  The evidence reveals that MBNA accurately reported Plaintiff's information until 1999; in 1999 MBNA sold Plaintiff's accounts; MBNA reported that sale and transfer to Equifax, and MBNA faithfully forwarded each piece of information to the buyers from 1999 onward.  Furthermore, Plaintiff has admitted that "MBNA has not acted with malice or any intent to harm Plaintiff in any way in the handling of his credit files." (MBNA Stat. Mat. Facts, at ¶ 12).  Plaintiff has also admitted that he "has suffered no damage as a direct result of any actions or inactions of MBNA."  (*Id.* ¶ 14).  Therefore, the court GRANTS MBNA's motion for summary judgment with regard to Plaintiff's claims under the FCRA.

### B.    Other Claims

Plaintiff has alleged that both Defendants violated SCUTPA.  In order to succeed on a claim under the South Carolina Unfair Trade Practices Act, a plaintiff must show:  (1) an unlawful trade practice; (2) plaintiff suffered actual damages as a result of the unlawful practice; and (3) that the unfair practice had an adverse effect on the public.  *See*, *e.g.*, *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998). Under South

29

Carolina law, the "public interest" prong is satisfied by evidence of potential for repetition of the unfair act.  *See*, *e.g.*, *Daisy Outdoor Advertising Co. v. Abbott*, 322 S.C. 489 (1996). For the reasons stated above, Plaintiff cannot show that Equifax or MBNA engaged in an "unlawful trade practice."  Further, Plaintiff has not offered sufficient evidence to satisfy the "public interest" prong of a claim under the South Carolina Unfair Trade Practices Act.[9] The court GRANTS Defendants' Motions for Summary Judgment as to these claims.

Plaintiff has also alleged that MBNA has breached various common law duties, including a fiduciary duty, duty of trust, etc.  On March 4, 2005, the court issued an order dismissing identical claims against Equifax.  The court adopts section II.B.3 of that order here.  Furthermore, Plaintiff has now admitted that "Both of Plaintiff's MBNA accounts at issue in this case were standard credit card accounts that did not impose fiduciary duties on Plaintiff or MBNA," and "[t]he contractual relationship between MBNA and Plaintiff was at all times an arms length commercial relationship. (MBNA Stat. of Mat. Facts, at ¶ 11). Thus, the court GRANTS MBNA's motion for summary judgment with respect to these claims.

---

[9]The only evidence that the court can find that might tend to support this prong is a *Business Week* news article submitted by Plaintiff. (P. Resp. Aff., Ex. I).  The court finds this evidence to be insufficient.

**III.    Conclusion**

The court GRANTS-IN-PART and DENIES-IN-PART Plaintiff's motion for costs [200] and awards Plaintiff $255.00.

The court GRANTS Plaintiff's motion for order [206].

The court DENIES Plaintiff's motion to strike second motion for summary judgment [211].

The court DENIES Plaintiff's motion to reopen discovery [212].

The court DENIES Plaintiff's motion for leave to file first amended complaint [215].

The court GRANTS Plaintiff's motion to join Equifax in his previous motion to strike summary judgment [217].

The court DENIES Plaintiff's motion for recusal [223].

The court GRANTS Defendant Equifax's motion to substitute attorney [203].

The court GRANTS Defendant Equifax's second motion for summary judgment [209].

The court GRANTS Defendant MBNA's motion for summary judgment [207].

**IT IS SO ORDERED** this 15th day of February 2008.


___s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

31